IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 20-cv-01788-RM-NRN

FRED SEBASTIAN, and
DUKE CAPITAL S.A.,

    Plaintiffs,

v.

GREENLINK INTERNATIONAL INC.,

    Defendant.

---

## ORDER

---

Before the Court are Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (ECF No. 66), requesting that the Court grant summary judgment in its favor on Plaintiffs' conversion claim and its counterclaims for breach of contract and declaratory relief, and Plaintiffs' Motion for Leave (ECF No. 73), seeking to modify the scheduling order to permit them to submit a rebuttal expert disclosure.  The Motions have been fully briefed.  (ECF Nos. 68, 70, 80, 81.)  For the reasons below, Defendant's Motion is granted in part and denied in part, and Plaintiffs' Motion is denied.

I.    BACKGROUND

Plaintiffs once owned more than 56 million shares of Defendant, formerly known as E-Debit Global Corporation.  But in June 2018, Defendant's board of directors passed a resolution allowing its management to cancel Plaintiffs' shares based on a loan agreement with Plaintiff Sebastian that, according to Plaintiffs, never existed.  Plaintiffs admit that a document

representing the loan agreement exists and that "a facsimile" of Plaintiff Sebastian's signature appears on it (ECF No. 68 at 4), while taking the position that Plaintiff Sebastian "first saw the alleged loan agreement when it was filed as an exhibit to an affidavit in this case" (ECF No. 71, ¶ 49). Plaintiffs also admit that they received a notice of demand for payment in June 2020 and did not contact Defendant before the shares were cancelled later that month. (*Id.* at ¶¶ 10, 12, 45-47.)

Plaintiffs initiated this lawsuit in June 2020; their only remaining claim is against Defendant for conversion. Defendant asserts counterclaims for breach of contract and declaratory relief premised on the loan agreement.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248.

    B.    **Leave to Amend Scheduling Order**

Where, as here, a scheduling order deadline has passed, Plaintiffs must establish good cause under Fed. R. Civ. P. 16(b)(4) to amend the scheduling order. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Id.* (quotation omitted). The Court has considerable discretion in determining what kind of showing satisfies the good cause standard and may focus on, inter alia, the diligence of the moving party, its reasons for seeking to amend, and any possible prejudice to the opposing party. *See Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 989 (10th Cir. 2019).

**III.**    **ANALYSIS**

    A.    **Plaintiffs' Claim**

To state a claim for conversion under Colorado law, Plaintiffs must allege that (1) Defendant exercised dominion or control over the cancelled shares; (2) that the shares belonged to them; (3) Defendant's exercise of control was unauthorized; (4) Plaintiffs demanded return of the property; and (5) Defendant refused to return it. *See DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1181 (D. Colo. 2019); *Scott v. Scott*, 428 P.3d 626, 634 (Colo. App. 2018). However, the fourth and fifth elements are not necessary where surrounding circumstances are sufficient in themselves to prove conversion. *See Fin. Corp. v. King*, 370 P.2d 432, 435 (Colo. 1962); *see also Tennille v. W. Union Co.*, 751 F. Supp. 2d 1168, 1173-74

(D. Colo. 2010) (concluding that pleading demand and refusal serves no logical function and is unnecessary where conversion claim is premised on interest accrued on unclaimed deposits).

Defendant argues that Plaintiffs fail to state a claim because they admit they never demanded return of the shares and that it was not given the opportunity to consider such a demand. (*See* ECF No. 66 at 11.) Defendant further argues that the circumstances are insufficient in themselves to prove conversion and that the loan agreement authorized the repurchase of the shares. Plaintiffs argue that because Plaintiff Sebastian never signed the loan agreement, Defendant had no legal basis to cancel the shares.

The Court first finds that the surrounding circumstances in themselves are insufficient to prove conversion. Plaintiffs have presented no evidence that Defendant—or anyone else, specifically—somehow affixed a facsimile of Plaintiff Sebastian's signature to the loan agreement. Nor have they adduced any evidence that Defendant had any reason to believe that the loan agreement was not valid. The demand for payment, to which Plaintiffs did not respond, referenced the loan agreement and informed Plaintiffs that action would be taken if payment was not received within fourteen days. (*See* ECF No. 67-1 at 21.) Having received no response, Defendant canceled the shares as permitted under terms of the loan agreement. Thus, in the absence of circumstances that are sufficient in themselves to prove conversion, Plaintiffs failure to demand return of the shares is fatal to their conversion claim.

The Court further finds that Plaintiffs have failed to adduce evidence that Defendant's cancellation of the shares was unauthorized. Indeed, Plaintiffs do not dispute that "[o]n June 19, 2018, having received no response to the Notice of Demand for Payment or payment toward the loan balance, Defendant's transfer agent was authorized to repurchase the 54,111,729 common shares." (ECF No. 71, ¶ 21.) Nor do Plaintiffs dispute that "[t]he only fact(s) identified by

Plaintiffs in their discovery response to support their contention that Defendant exercised 'unauthorized' dominion or control over Plaintiffs' shares is that 'Plaintiffs deny that either Mr. Sebastian or Duke Capital, individually or collectively, executed an August 31, 2012 Loan Agreement' and 'Plaintiffs dispute the existence of any loan and any loan agreement." (*Id.* at ¶ 22.) Given these concessions by Plaintiffs and the absence of any evidence that Defendant had any reason to believe it could not lawfully repurchase the shares when it did so, the Court finds Plaintiffs have failed to adduce evidence that Defendant's exercise of control over the shares was unauthorized. Put differently, the cancellation of the shares was apparently authorized by the loan agreement, whether valid or not. Accordingly, even if pleading demand and refusal were not required under the circumstances of the case, Defendant is still entitled to summary judgment on Plaintiffs' conversion claim.

### B.  Defendant's Counterclaims

"Under Colorado law, a breach of contract claim has four elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Mattys v. Narconon Fresh Start*, 104 F. Supp. 3d 1191, 1204 (D. Colo. 2015) (quotation omitted). In light of Plaintiff Sebastian's unequivocal declaration that he did not sign the loan agreement (ECF No. 69-1, ¶ 24), the Court finds there are genuine issues of material fact as to the existence of a valid contract. As a result, Defendant cannot prevail on either of its counterclaims for breach of contract and declaratory relief at this stage of the case.

### C.  Plaintiffs' Motion for Leave

Defendant filed its Motion for Summary Judgment after the expert witness disclosure deadlines had passed and discovery was closed. (*See* ECF No. 40 at 9.) Plaintiffs contend it

was at that time they learned Defendant intended to authenticate Plaintiff Sebastian's signature on the loan agreement with nonexpert opinion testimony by one of its board members, Doug Mac Donald.  *See* Fed. R. Evid. 702(b)(2) (stating authentication requirement may be satisfied by "[a] nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation").  To rebut such testimony, Plaintiffs now seek to present expert testimony that the signature on the loan agreement is not authentic, despite failing to designate either an expert or a rebuttal expert by the deadlines set forth in the scheduling order.

The Court notes that Plaintiffs' previous Motion to Amend Scheduling Order (ECF No. 56) was summarily denied by United States Magistrate Judge N. Reid Neureiter (ECF No. 58) and finds Plaintiffs still have not established good cause to amend the scheduling order. Contrary to Plaintiffs' suggestion, Defendant did not indicate for the first time that Mr. Mac Donald's testimony would be the basis for authenticating the loan agreement in its summary judgment motion.  Rather, Defendant authenticated the loan agreement via Mr. Mac Donald's testimony in October 2020, when it successfully moved to set aside entry of default in this case. (*See* ECF Nos. 28, 28-1.)  And because Defendant did not designate any experts by the deadline in October 2021, Plaintiffs were on notice that Defendant would likely authenticate the loan agreement by the same means at trial.  Therefore, Plaintiffs have been less than diligent about preparing for the contingencies of this case.

Plaintiffs' request is now moot with respect to their conversion claim.  But should this case proceed to trial on Defendant's counterclaims, the Court finds Defendant would be prejudiced and unfairly surprised if, now that the parties have completed discovery while under the impression that no experts would testify, Plaintiffs were suddenly permitted to present expert testimony.

Moreover, although the parties dispute the *validity* of the loan agreement, the Court does not foresee *authentication* of the agreement being an issue at trial. Plaintiffs' position is that "[t]he signature on the alleged August 31, 2012 loan agreement is a facsimile of Mr. Sebastian's from the securities agreement he signed on August 15, 2012." (ECF No. 71, ¶ 50.) And it is undisputed that Mr. Mac Donald and Plaintiff Sebastian have a business relationship spanning decades. Under the circumstances, the Court cannot fathom a scenario in which the loan agreement—the key document of the case—would not be admitted at trial, should one be necessary. In any event, it is much too late for an expert witness disclosure, and Plaintiffs' Motion must be denied.

## IV.   CONCLUSION

The Court ORDERS as follows:

(1)   Defendant's Motion (ECF No. 66) is GRANTED IN PART with respect to Plaintiffs' conversion claim and DENIED IN PART with respect to its counterclaims, and

(2)   Plaintiffs' Motion (ECF No. 73) is DENIED.

DATED this 15th day of September, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge